IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | : |
| | :    CRIMINAL ACTION |
| v. | : |
| | :    No. 12-632-01 |
| JERMAINE TRIPPETT | : |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                               **March 5, 2021**

Before the Court is Jermaine Trippett's *pro se* motion for compassionate release. For the reasons that follow, the motion is granted.

**I.     FACTUAL BACKGROUND**

On three occasions in February 2011, Trippett sold $20 worth of crack cocaine out of his home to a confidential informant for the Philadelphia Police Department's Narcotic Field Unit. After the third sale, law enforcement executed a search warrant on Trippett's home. The search recovered an operable semi-automatic firearm, an additional 6.598 grams of crack cocaine, and drug paraphernalia. Trippett pleaded guilty to three counts of distribution of cocaine base, possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.

For these charges, the Honorable Robert F. Kelly sentenced Trippett to a total of 144 months imprisonment to be followed by three years of supervised release. This sentence was below the advisory sentencing guidelines range of 262 to 327 months. Trippett argued at sentencing that a downward departure was appropriate under *United States v. Shoupe*, 988 F.2d 440 (3d. Cir. 1993) because the Sentencing Guidelines over-represented his criminal history category. Trippett has been incarcerated for approximately 120 months. He has accrued 14 months of good conduct time,

for a total of 134 months served, which is approximately 93 percent of his full sentence. His projected release date is July 8, 2021.

In May of 2020, when the Court first began issuing opinions deciding compassionate release motions, a little over 100,000 Americans had succumbed to COVID-19. Sadly, the country's inability to control the pandemic has made that number look small relative to the number of Americans who have lost their lives to the disease as of this writing. Today, more than half a million Americans have died due to COVID-19. And it is just as true today as it was during earlier days of the pandemic that prisons present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 394 (E.D. Pa. 2020) ("Prisons are tinderboxes for infectious disease.").

Trippett is incarcerated at FCI McKean, where the Bureau of Prisons (BOP) reports that three inmates are actively infected with COVID-19 and 452 inmates have previously been infected with the virus. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last updated Mar. 4, 2021). To date, the BOP reports that 330 inmates at FCI McKean have received a COVID-19 vaccine. (*Id.*) There is no indication in the record that Trippett has been inoculated. (*Id.*) Trippett sought compassionate release from the warden at FCI McKean on December 20, 2020. (Gov't's Resp. in Opp. to Def.'s Mot. to Reduce Sentence [Gov't's Resp.] at 6.) On January 5, 2021 the warden denied that request. (*Id.*) Trippett's *pro se* motion was filed in this Court on January 11, 2021.

Trippett's *pro se* motion for compassionate release is based on his experience having contracted COVID-19 while incarcerated at FCI McKean and his fear of reinfection. Trippett tested positive for COVID-19 on December 12, 2020. (Def.'s Mot. for Compassionate Release at 1.) He reports having experienced symptoms of back pain, loss of taste and smell, coughing, and

shortness of breath. (*Id.* at 2.) He states that while he was in isolation with COVID-19, he received "very little medical attention." (*Id.*) He describes the experience as "very scary at times fighting day to day," because he did not know if he would fully recover. (*Id.* at 1.) He states that he now hopes and prays that he will "never get exposed to the virus again[.]" (*Id.* at 2.) Trippett's pro se motion does not mention any chronic health conditions that place him at risk for severe illness from COVID-19. The BOP medical records provided by the Government reveal that he is 43 years old, and he had high blood pressure at each of his three recorded blood pressure readings since December 2019. (Doc. No. 58, Ex. A to Gov't's Resp. [Medical Records] at 32, 67, 84.)

On February 24, 2021, the Government filed a Response in Opposition to Trippett's motion that argues Trippett "contracted COVID-19 and, fortunately, apparently recovered from it without significant consequence." (Gov't's Resp. at 15.). On February 26, 2021, the Government filed an Amended Response in Opposition which states that Trippett's COVID-19 positive test "was recorded only on an Abbott rapid test device, which has proven unreliable at times," so the Government believes that "it cannot definitively be stated that Trippett previously tested positive" for COVID-19. (Gov't's Am. Resp. in Opp. to Def.'s Mot. to Reduce Sentence [Gov't's Am. Resp.] at n.1.)

Trippett's medical records reflect that he tested positive on an Abbott swab COVID-19 RNA Test on December 12, 2020. (Medical Records at 75, 77, 99.) Trippett did not have any symptoms on that date. (*Id.* at 78, 90.) Trippett's medical vital statistics were recorded at this December 12 clinical encounter. (*Id.* at 78, 84-85, 90.) On December 13, 2020, Trippett had another clinical encounter where his medical vital statistics were recorded. (*Id.* at 72, 84-85, 88.) He complained of a headache, had a temperature of 99.1 degrees Fahrenheit, and was prescribed Tylenol. (*Id.* at 72-73.) On December 16, 2020, Trippett tested positive on a COVID-19 Antigen

(AG) test. (*Id.* at 70, 100.) On December 22, 2020, Trippett underwent a medical screening, where he reportedly displayed no symptoms of COVID-19. (*Id.* at 87.) Trippett's medical vital statistics were recorded at this December 22 clinical encounter. (*Id.* at 84-85, 87.) Trippett's medical records do not reveal any medical screenings or recording of his vital statistics between December 13, 2020 and December 22, 2020, or anytime thereafter in 2020. (*Id.* at 84-85, 87-90.) Trippett's medical records indicate that his diagnosis of COVID-19 was resolved as of December 28, 2020. (*Id.* at 39, 96.) Since that date, Trippett's medical records do not reflect any ongoing health problems related to COVID-19.

## II.     DISCUSSION

### A.     Compassionate Release Statute

Upon a motion of the defendant, the district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before filing a motion for compassionate release, the defendant must exhaust administrative rights to appeal with the BOP or thirty days must have passed since the submission of a request to the warden, whichever is earlier. *Id.* § 3582(c)(1)(A).[1] Prior to granting compassionate release, a district court must also "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*.

The reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(ii). The Sentencing Commission adopted a policy statement regarding extraordinary and compelling reasons to warrant reduction of a

---

[1]     The Government did not raise failure to exhaust administrative appeals in its Responses in Opposition, so the Court concludes that the issue is waived, or alternatively, that Trippett's administrative remedies were exhausted. *See generally United States v. Adams*, Crim. A. No. 00-697, 2020 WL 6063055, at *3 n.1 (D.N.J. Oct. 14, 2020).

sentence "[u]pon motion of the Director of the Bureau of Prisons[.]" U.S.S.G. § 1B1.13. Since passage of the First Step Act, the Sentencing Commission has not adopted a new policy statement to address defendant-filed motions for compassionate release. *Rodriguez*, 451 F. Supp. 3d at 397 (E.D. Pa. 2020).[2] As a result, currently, there is no policy statement of the Sentencing Commission applicable to motions for compassionate release filed by defendants. *Id.* at 398 (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)). In the absence of an applicable policy statement from the Sentencing Commission, the district court has discretion to determine what circumstances constitute extraordinary and compelling reasons for a reduction of sentence. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *Rodriguez*, 451 F. Supp. 3d at 400 (E.D. Pa. 2020). District courts "are not hamstringed because the Sentencing Commission has failed to update the pertinent guidance." *United States v. Adeyemi*, 470 F. Supp. 3d 489, 510 (E.D. Pa. 2020) (citing *United States v. Dixon*, 648 F.3d 195, 200-01 (3d Cir. 2011)).

The commentary to the policy statement pertaining to compassionate release motions brought by the Director of the BOP describes extraordinary and compelling reasons to release certain defendants, including those who are terminally ill, aging, or experience the death or incapacitation of a spouse or caregiver to their minor child. U.S.S.G. § 1B1.13 cmt. n1(A)-(C). According to that policy statement, extraordinary and compelling reasons also exist when a defendant has a serious physical or medical condition that "substantially diminishes the ability of

---

[2]   Many courts have pointed out that the Sentencing Commission has been unable to amend its policy statement because it has lacked a quorum to act. *See, e.g.*, *United States v. Marks*, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020).

the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[.]" U.S.S.G. § 1B1.13 cmt. n1(A)(ii).

### B. Extraordinary and Compelling Reasons

In the midst of the ongoing pandemic, it is the Government's position that a defendant "who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" qualifies as having an extraordinary and compelling reason for compassionate release, pursuant to the Sentencing Commission's policy statement note 1(A), because he may be less able to protect himself from an adverse outcome related to COVID-19 while in prison. (Gov't's Resp. at 13-14.) However, the Government also raises the distinction between conditions that the CDC has stated increase the risk of an adverse outcome and those that the CDC has stated might increase that risk. The Government takes the position that an inmate who only has a condition in the latter category does not present an extraordinary and compelling reason for release. (*Id*. at 14.) Hypertension is a condition that "might" increase a person's risk of serious illness or death from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021).

Here, the Government argues that Trippett's motion must be denied because he does not point to any health conditions that put him at risk of serious illness from COVID-19. (Gov't's Resp. at 15.) Trippett does not mention any chronic health conditions in his *pro se* motion for compassionate release. Although his medical records do not indicate a diagnosis of hypertension, the records do reveal that each of his three blood pressure readings in the last fifteen months have fallen in the range for a diagnosis of hypertension. Hypertension classification is based upon the average of two or more properly measured blood pressure readings at two or more office visits.

*The Seventh Rep. of the Joint Nat'l Comm. on Prevention, Detection, Evaluation, and Treatment of High Blood Pressure*, U.S. Dep't of Health and Human Services, Nat'l Inst. Of Health & Nat'l Heart, Lung, and Blood Institute, NIH Pub. No. 03-5233 at p. 2-3 (Dec. 2003), https://www.nhlbi.nih.gov/files/docs/guidelines/express.pdf. The CDC describes blood pressure levels over 140 systolic or 90 diastolic as stage two hypertension. *Facts About Hypertension*, CDC, https://www.cdc.gov/bloodpressure/facts.htm (last updated Sept. 8, 2020). Trippett's blood pressure readings from December 2019, January 2020, and January 2021 are 147/97, 148/94, and 146/94 and 135/89, respectively. (Medical Records at 32, 67, 84.)

Upon review of Trippett's medical records, the Court is not convinced by the Government's argument that "it cannot definitively be stated that Trippett previously tested positive" for COVID-19. (Gov't's Am. Resp. at n.1.) It appears Trippett had two positive COVID-19 tests in the span of four days, including both an RNA test and an Antigen test. (Medical Records at 70, 75, 77, 99-100.) He was initially tested after his cellmate experienced COVID-19 symptoms. (*Id.* at 78, 90.) He is also living in a facility where over half the inmate population has been infected with the virus.[3] If the BOP had significant doubts about the accuracy of the testing it used, the BOP should have confirmed Trippett's results with a more accurate PCR test. It did not. Instead, the BOP noted in Trippett's medical records that he had a confirmed case of COVID-19. (*Id.* at 39, 96.) The Court will not allow the Government to employ the BOP's decision to use only rapid tests to argue in court that an inmate's previous positive COVID-19 status cannot be confirmed, and therefore cannot be relied upon in assessing his medical vulnerability.

---

[3]     *Compare COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last updated Mar. 4, 2021) (454 recovered COVID cases), *with* FCI McKean, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/mck (last visited Mar. 5, 2021) (population of 822 inmates at the FCI).

The Government states that Trippett was "monitored regularly" after he tested positive for COVID-19 on December 12, and that he "remained asymptomatic." (Gov't's Am. Resp. at 7.) But these assertions are not supported by the BOP medical records and are contradicted by Trippett's *pro se* motion. On the day after Trippett first tested positive for COVID-19, his medical records reveal that he complained of a headache, had a temperature of 99.1 degrees Fahrenheit, and was prescribed Tylenol. (*Id.* at 72-73.) After this clinical visit on December 13, Trippett's medical records do not reveal any medical screenings or recording of his vital statistics until December 22. (*Id.* at 84-85, 87-90.) Trippett states that while he was in isolation with COVID-19 he received "very little medical attention." (Def.'s Mot. for Compassionate Release at 2.) Trippett's account is supported by his medical records, which show that he received no medical screening for eight days while he was in isolation with COVID-19. Without any medical screening during that time, the Government has no basis to assert that Trippett remained asymptomatic after testing positive for the virus. To the contrary, Trippett describes that he experienced symptoms of back pain, loss of taste and smell, coughing, and shortness of breath. (*Id.*) The Court is also very concerned by the demonstrably few medical screenings Trippett received at FCI McKean while in isolation with COVID-19.

Trippett's medical records do not reflect any ongoing health problems related to COVID-19 since his recovery in late December. But the science about the risk of reinfection is uncertain.[4] It seems severity of the disease can be worse in a second infection.[5] As a result, some courts in

---

[4] *See Investigation Criteria for Suspected Cases of SARS-CoV-2 Reinfection (ICR)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/php/invest-criteria.html (last updated Oct. 27, 2020).

[5] *See* Cavanaugh A.M. et al., *Suspected Recurrent SARS-CoV-2 Infections Among Residents of a Skilled Nursing Facility During a Second COVID-19 Outbreak — Kentucky, July–November 2020*, MMWR Morb. Mortal. Wkly. Rep. 70(8):273–277, https://www.cdc.gov/mmwr/volumes/70/wr/mm7008a3.htm. Risk of reinfection could also increase in the future with exposure to new variants of the virus. *See Interim Guidance on Duration*

this District have granted release to defendants who have medical conditions that put them at risk of serious illness from COVID-19, even if they have previously recovered from the virus. *See United States v. Staats*, Crim. A. No. 17-461, 2020 WL 6888224, at *5 (E.D. Pa. Nov. 24, 2020); *United States v. Babbitt*, Crim. A. No. 18-384, 2020 WL 6153608, at *8 (E.D. Pa. Oct. 21, 2020). Indeed, as the Government noted in its first Response in Opposition, the fact that Trippett apparently recovered from COVID-19 "without significant consequence" does not "eliminate[] all risk, given that there is not yet scientific certainty regarding a risk of reinfection." (Gov't's Resp. at 15-16.)

Trippett's elevated blood pressure readings on three occasions over the course of the last fifteen months potentially increase his chances for severe illness from COVID-19, and he has already suffered from COVID-19 with relatively little medical attention at FCI McKean. Moreover, he only has four months remaining on his prison sentence. If Trippett were reinfected with COVID-19 during his continued confinement at FCI McKean, he could suffer serious health consequences, but serving the remaining four months of his sentence but would make a marginal difference to the seriousness of his punishment. Taken together, the Court finds this situation presents extraordinary and compelling reasons for a reduction of his sentence in the midst of the ongoing pandemic.

**C.     Consistency with Sentencing Considerations**

Finally, the Court must consider whether Trippett's immediate release is appropriate in light of the Section 3553(a) factors. The relevant factors include the nature and circumstances of

---

*of Isolation and Precautions for Adults with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated Feb. 13, 2021) (citing Wibmer CK, Ayres F, Hermanus T, et al. *SARS-CoV-2 501Y.V2 Escapes Neutralization by South African COVID-19 Donor Plasma*, Preprint. bioRxiv. 2021.01.18.427166, Jan. 19, 2021, *available at* https://www.biorxiv.org/content/10.1101/2021.01.18.427166v1).

the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). This determination is left to the discretion of the district court. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Court may consider the amount of time left on a defendant's sentence in deciding a motion for compassionate release. *Pawlowski*, 967 F.3d at 331. This is so because the length of time the defendant has already served is highly relevant to whether a reduced sentence will still sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence disparities. *See id.*; 18 U.S.C. § 3553(a)(2,6). Here, Trippett has already served 93 percent of his sentence and will inevitably be released in four months. In light of this, the Court concludes that a reduction of Trippett's sentence to time served still adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence to criminal conduct.

The Government contends that Trippett should not receive a reduction in sentence because he continues to present a potential danger to the community. (Gov't's Resp. at 18.) To support this argument, the Government points to the fact that Trippett was "dealing dangerous drugs, *i.e.*, crack cocaine" and the fact that he was on parole when the search warrant was executed. (*Id.*) All of Trippett's prior convictions involve distributing or possessing relatively small quantities of drugs, and he was charged with aggravated assault of police officers during one arrest. The offense for

which he was on parole at the time of the instant offense was possession with the intent to deliver 2.55 grams of crack cocaine. None of his previous charges involved carrying a firearm during the commission of the offense. Here, the firearm involved was found in a closet in Trippett's home, but he did not carry it on his person or brandish it in the commission of drug trafficking.

The Government notes that Trippett has had six disciplinary infractions while incarcerated for having an extra mattress in 2013, refusing an order in 2013, failure to follow safety regulations in 2013, refusing an order in 2015, possessing stolen property in 2016, and fighting with an inmate in 2016. (Gov't's Resp. at 5-6.) Trippett states that he has completely transformed his life and means of decision-making while incarcerated. (Def.'s Mot. for Compassionate Release at 2.) He has learned trade skills and participated in programs while incarcerated in order to improve his opportunities upon returning home. (*Id.*; *see also* Document No. 44.) Trippett also describes the importance to him of returning to his 14-year-old son. (Mot. for Compassionate Release at 2.)

Trippett's distribution of crack cocaine and possession of a firearm were serious offenses, but that fact alone does not indicate Trippett is a continuing danger to the community. He has served more than a decade for his crimes—nearly his entire sentence—and he will be required to spend another three years on supervised release. This continuous monitoring should both provide adequate deterrence and protect the public from further crimes. Considering all of the relevant factors, the Court concludes that compassionate release is warranted.

### III.   CONCLUSION

For the foregoing reasons, Jermaine Trippett's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A)(i) is granted. Trippett must now begin three years of supervised release. An Order consistent with this Memorandum will be docketed separately.